UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABREY ARMON WILLIS,

Petitioner,

Case No. 2:16-cv-11779

v.

GERSHWIN A. DRAIN
United States District Judge

SHANE PLACE,

STEPHANIE DAWKINS DAVIS
United States Magistrate Judge

Respondent.

_____/

**OPINION AND ORDER
DENYING THE HABEAS CORPUS PETITION,
DENYING A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

This matter has come before the Court on petitioner Abrey Armon Willis's *pro se* habeas corpus petition under 28 U.S.C. § 2254. The petition challenges Petitioner's Washtenaw County, Michigan conviction for aggravated stalking, Mich. Comp. Laws § 750.411i. Petitioner alleges as grounds for relief that (1) he was deprived of effective assistance of trial counsel, (2) the prosecutor committed misconduct, (3) the trial court abused its discretion when it denied his post-trial motion for an evaluation of criminal responsibility, and (4) he was improperly sentenced to a maximum sentence of thirty-five years. The State urges the Court to deny the petition, and the Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

# I. BACKGROUND

Petitioner was tried before a jury in Washtenaw County Circuit Court.  The

state court summarized the evidence as follows:

> Defendant met and moved in with complainant in August 2011.
> Complainant testified that their relationship was often troubled.  She
> stated that, at one point, defendant wrote the words "bitch" and
> "whore" on her walls and that he severely beat her on more than one
> occasion.  Defendant once threatened to hit complainant in the
> stomach when she was pregnant and both she and defendant believed
> the child to be defendant's.  In February 2012, complainant escaped
> her home and found refuge in a shelter for victims of domestic
> violence.  The next month, she obtained a personal protection order
> (PPO) prohibiting defendant from contacting her or communicating
> with her via mail or telephone.
>
> From February 2012 through July 2012, defendant was incarcerated
> for domestic assault.  In spite of complainant's PPO, defendant sent
> her letters and called her cellular telephone from jail.  Complainant
> testified that she felt threatened by this communication because
> defendant stated that he wanted to return to her house and remain in
> her life.  Within minutes of his release from jail in July 2012,
> defendant called complainant and as a result was arrested for violating
> the PPO.  In October 2012, defendant waited across the street while
> his friend attempted to serve complainant with papers to have the PPO
> removed.  Defendant was then arrested on a felony warrant for
> aggravated stalking.

*People v. Willis*, No. 318341, 2015 WL 340281, at *1 (Mich. Ct. App. Jan. 27,
2015).

Petitioner testified in his own defense and denied threatening the

complainant.  His defense was that, because the complainant accepted his calls and

letters, he did not think his conduct was wrong and that reasonable doubt existed as to whether a reasonable person would have felt threatened by his calls and letters.

On February 26, 2013, the jury found Petitioner guilty, as charged, of aggravated stalking. Petitioner subsequently moved for an evaluation of criminal responsibility, claiming that he did not know his conduct was wrong when he contacted the complainant. On March 27, 2013, the trial court heard oral arguments on Petitioner's motion, denied the motion, and then sentenced Petitioner to prison for three to thirty-five years with 173 days of jail credit.[1]

In an appeal of right, Petitioner argued through counsel that: (1) the prosecutor failed to submit sufficient evidence to support his conviction, (2) the prosecutor (a) made unsupported factual and legal proclamations, (b) elicited and emphasized irrelevant and prejudicial material, and (c) denigrated the defense; and (3) the trial court erroneously scored points for offense variable 10 of the sentencing guidelines and violated his right to due process by imposing a sentence based on inaccurate information. In a *pro se* supplemental brief, Petitioner argued that: (1) the trial court abused its discretion when it denied his post-trial motion for an evaluation on criminal responsibility; and (2) trial counsel provided ineffective

---

[1] Petitioner was released on parole on October 3, 2017. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=683256.

assistance when he failed to (a) pursue a criminal-responsibility defense, (b) impeach several witnesses, (c) object to the admission of hearsay, and (d) object to the prosecutor's misconduct. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his conviction and sentence in an unpublished, *per curiam* opinion. *See Willis*, 2015 WL 340281.

Petitioner made similar arguments in an application for leave to appeal in the Michigan Supreme Court. He also raised two new issues regarding his maximum sentence and the complainant's use of the legal system. On September 29, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review any of the issues. *See People v. Willis*, 498 Mich. 884; 869 N.W.2d 584 (2015).

On May 17, 2016, Petitioner filed his habeas corpus petition. He alleges as grounds for relief that: (1) his trial attorney was ineffective; (2) the prosecutor engaged in misconduct; (3) the trial court abused its discretion when it denied his motion for an evaluation of criminal responsibility; and (4) he is entitled to re-sentencing on his maximum term of thirty-five years. *See* Pet. for Writ of Habeas Corpus, at 5, 7-8, 10, Dkt. No. 1, pp. 5-15 (Pg. ID 5-15). The Court has looked to Petitioner's state appellate court briefs for a fuller understanding of these claims.

The State argues in an answer to the petition that: the Michigan Court of Appeals decision on Petitioner's first claim was reasonable; Petitioner's prosecutorial-misconduct claim is procedurally defaulted and meritless or any error was harmless; Petitioner waived his claim about the trial court's abuse of discretion and the claim is procedurally defaulted and not cognizable on habeas review; and Petitioner's sentencing claim is unexhausted, not cognizable, and without merit. Answer in Opp'n to Pet. for Writ of Habeas Corpus, at i-iii, Dkt. No. 9, pp. 2-4 (Pg. ID 39-41).

Although habeas petitioners generally are required to exhaust state remedies for all their claims before presenting the claims to a federal court in a habeas corpus petition, *see* 28 U.S.C. § 2254(b)(1), the exhaustion rule is not a jurisdictional requirement, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and Petitioner's claims do not warrant habeas relief. Accordingly, the Court bypasses the exhaustion issue and proceeds to address Petitioner's claims rather than dismissing the petition for failure to exhaust state remedies.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or

involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

## III. ANALYSIS

### A. Trial Counsel

Petitioner alleges first that he was deprived of effective assistance of trial counsel. The Court understands Petitioner to be alleging that his trial attorney failed to: (1) file a motion seeking an evaluation for criminal responsibility and pursue a defense on the basis of Petitioner's lack of criminal responsibility; (2) impeach witnesses with their false testimony and past crimes for theft and dishonesty; (3) object to the prosecutor's use of evidence regarding Petitioner's prior acts of domestic violence; and (4) object to the admission of hearsay evidence.[2]

#### 1. Clearly Established Federal Law

To prevail on his claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not

_____

[2] The Court will address Petitioner's claim about defense counsel's failure to object to the prosecutor's questions and remarks in Section III.B. of this opinion.

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
*Id*.  "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.

### 2.  Application

#### a.  Criminal Responsibility

Petitioner alleges that trial counsel was ineffective for failing to move for an evaluation of his criminal responsibility and for failing to pursue a defense that

Petitioner lacked criminal responsibility for his crime. Petitioner raised this issue at his sentencing where he stated that, because of his untreated depression and anxiety disorders, he did not realize that his behavior was wrong. *See* 3/27/13 Mot. and Sentencing Tr., at 3-5, Dkt. 10-5, pp. 3-5 (Pg. ID 239-41).

Defense counsel responded to Petitioner's allegation by stating that Petitioner did not request an evaluation for criminal responsibility until after the jury rendered its verdict. Counsel admitted that he and Petitioner had previously discussed the issue, but he pointed out that the defense at trial was that Petitioner did not understand the wrongfulness of his conduct. *Id.*, at 3, 5, Dkt. No. 10-5, pp. 3, 5 (Pg. ID 239, 241); *see also* 2/25/13 Trial Tr., at 114, Dkt. No. 10-3, p. 29 (Pg. ID 183) (defense counsel's opening statement at trial where he says that it was Petitioner's belief his contacts with the complainant were not unwelcome).

The trial court denied Petitioner's motion for a criminal-responsibility evaluation because the court did not see any basis in the record for granting the motion. 3/27/13 Mot. and Sentencing Tr., at 7, Dkt. 10-5, p. 7 (Pg. ID 243). The Michigan Court of Appeals upheld the trial court's ruling because there was no evidence in the record that Petitioner lacked the capacity to appreciate the wrongfulness of his action or the ability to conform his conduct to the law at the time of the offense. The Court of Appeals correctly pointed out that, according to

the trial evidence, Petitioner knew that what he was doing was wrong. *See, e.g.,* 2/25/13 Trial Tr., at 193, Dkt. No. 10-3, p. 49 (Pg. ID 203) (Police Officer Kevin Taylor's testimony that, shortly after Petitioner's release from jail, Petitioner informed him that, pursuant to the PPO, he was not allowed to see the complainant, go to her house, write to her, or call her). Given this testimony and other indications that Petitioner knew it was wrong to contact the complainant, defense counsel was not ineffective for failing to request an evaluation for criminal responsibility.

### b. False Testimony and Prior Crimes

Petitioner alleges next that defense counsel was ineffective for failing to impeach two witnesses with their false testimony and one witness's past crimes for theft and dishonesty.

### i. Police Officer Dennis Marra

Officer Marra testified at trial that he never saw a letter in which Petitioner supposedly stated to the complainant that no white man in a black robe would keep him from seeing the complainant. *Id.*, at 223, Dkt. No. 10-3, p. 56 (Pg. ID 210). Petitioner contends that defense counsel should have impeached Officer Marra with Marra's testimony at the preliminary examination that he did recall reading

the comment in a letter to the complainant.  10/30/12 Prelim. Examination Tr., at 41, Dkt. No. 10-2, p. 21 (Pg. ID 136).

Despite counsel's failure to impeach Officer Marra with the inconsistency in his testimony, the complainant testified about the letter and about Petitioner's comment that no man in a robe would keep him from seeing her.  2/25/13 Trial Tr., at 132-33, 153, 165-66, 178, Dkt. No. 10-3, pp. 33-34, 39, 42, 45 (Pg. ID. 187-88, 193, 196, 199).  In addition, defense counsel explained to the trial court in the jury's absence that he decided not to impeach Officer Marra with his contradictory testimony at the preliminary examination because the letter was not offered in evidence and there was no proof that it existed.  Defense counsel preferred to have the jury believe that the letter did not exist, and he thought that impeaching Officer Marra with the letter would have substantiated the letter's existence.  *Id.*, at 267-69, Dkt. No. 10-3, pp. 67-68 (Pg. ID 221-22).  This was reasonable trial strategy, which counsel maintained during his closing argument where he suggested to the jury that the letter never existed.  2/26/13 Trial Tr., at 22, Dkt. No. 10-4, p. 6 (Pg. ID 228).  The Court concludes that defense counsel's failure to impeach Officer Mara with his testimony at the preliminary examination was not ineffective assistance.

### ii.  The Complainant

Petitioner points out that, at times during his trial, the complainant denied accepting his phone calls. Petitioner contends that defense counsel should have impeached the complainant with recordings of calls that she did answer. The complainant, however, admitted on direct examination by the prosecutor that she initially accepted Petitioner's phone calls and that "[a] lot of times [she] did pick up [the phone]." 2/25/13 Trial Tr., at 132, Dkt. No. 10-3, p.33 (Pg. ID 187).

Additionally, to his credit, defense counsel elicited the complainant's testimony that she talked to Petitioner on the phone one time because it was not a collect call and because the call did not appear to come from the jail. *Id.*, at 161, Dkt. No. 10-3, p. 41 (Pg. ID 195). Defense counsel elicited additional testimony that the complainant talked to Petitioner by phone two times after his release from jail. *Id.*, at 169-72, Dkt. No. 10-3, p. 43 (Pg. ID 197). The complainant also explained on re-cross-examination by defense counsel that, from February to July of 2012, she picked up the phone and heard what Petitioner was saying. *Id.*, at 182, Dkt. No. 10-3, p. 46 (Pg. ID 200).

Petitioner, moreover, testified that the complainant accepted his calls and that there were some calls which were edited or not played for the jury. *Id.*, at 242, 244, and 254-56, Dkt. No. 10-3, pp. 61, 64 (Pg. ID 215, 218). Given Petitioner's testimony and the complainant's admissions that she answered some of Petitioner's

calls, defense counsel was not ineffective for failing to impeach the complainant with any additional evidence demonstrating that she answered Petitioner's calls.

Petitioner also alleges that defense counsel should have impeached the complainant with her crimes of theft and dishonesty. However, "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams,* 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002) (citing *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)). "[T]actical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*. at 872 (citing *Johnson v. Hofbauer*, 159 F. Supp.2d 582, 607 (E.D. Mich. 2001)). Furthermore, because Petitioner has not supported his allegation with any proof that the complainant had a prior record which could have been used to impeach her, defense counsel was not ineffective for failing to raise the issue.

### c. Failure to Object to Evidence of Prior Domestic Violence

Petitioner appears to argue, as he did in state court, that defense counsel should have objected to evidence of his prior acts of domestic violence. The Michigan Court of Appeals, however, determined that the evidence was admissible under Mich. Comp. Laws § 768.27b, which states that, except for acts occurring more than ten years before the charged offense, "in a criminal action in which the

defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." Mich. Comp. Laws § 768.27b)(1), (4).

This Court must defer to the state court's interpretation of state law, *Bradshaw v. Richey*, 546 U.S. 74, 74 (2005), 546 U.S. 74, 76 (2005), and because the state court determined that evidence of prior acts of domestic violence was admissible under § 768.27b(1), an objection would have lacked merit. Defense counsel was not obligated to make a meritless objection. *Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 508 (6th Cir. 2012).

Furthermore, to his credit, defense counsel pointed out that Petitioner had already served his time in jail for domestic violence. Counsel maintained that the pertinent questions were whether Petitioner's conduct was unwelcome and whether did something which would make a reasonable person afraid. 2/25/13 Trial Tr., at 109, 114, Dkt. No. 10-3, pp. 28-29 (Pg. ID 182-183).

Finally, the trial court instructed the jurors that they could consider evidence that Petitioner was convicted of a crime in the past only when deciding whether they believed Petitioner was a truthful witness. The court cautioned the jurors not to use evidence of a past conviction as evidence that the defendant committed the

alleged crime in the present case. 2/26/13 Trial Tr., at 41, Dkt. No. 10-4, p. 11 (Pg. ID 233). This instruction mitigated any prejudice that may have occurred as a result of defense counsel's failure to object.

### d. Hearsay

Petitioner alleges that defense counsel should have objected to the prosecutor's elicitation of hearsay testimony, but he has not pointed to any specific instances of hearsay in the record. His conclusory allegations about defense counsel are not a basis for habeas corpus relief. *Workman v. Bell,* 178 F.3d 759, 771 (6th Cir.1998).

In conclusion, Petitioner has not shown that his trial attorney's performance was deficient and that he was prejudiced by the attorney's alleged errors or omissions. Accordingly, the Court declines to grant relief on Petitioner's ineffective-assistance-of-counsel claim.

## B. The Prosecutor

Petitioner alleges next that the prosecutor engaged in misconduct. Specifically, Petitioner contends that the prosecutor made unsupported factual and legal statements, elicited and emphasized irrelevant and prejudicial information, denigrated the defense, and defined the crime to fit her theory of the case. The

State argues that Petitioner's prosecutorial-misconduct claim is procedurally defaulted.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

## 1. The State Rule

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to preserve their appellate claims by objecting on the same ground in the trial court. *People v. Buie*,

298 Mich. App. 50, 70-71; 825 N.W.2d 361, 374 (2012). Petitioner did not object at trial to the prosecutor's alleged errors. Therefore, the first procedural-default factor is satisfied.

## 2. Enforcement of the State Rule

The second factor is satisfied because the Michigan Court of Appeals enforced the contemporaneous-objection rule. The Court of Appeals stated that Petitioner did not preserve his prosecutorial-misconduct claims by objecting to the prosecutor's conduct at trial and, therefore, the court was limiting its review to plain error affecting substantial rights. *See Willis,* 2015 WL 340281, at *2 n.3. Although the Michigan Court of Appeals also addressed Petitioner's prosecutorial-misconduct claims on the merits, this alternative holding "does not require [the Court] to disregard the state court's finding of procedural bar." *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way,

a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id*. at 264 n.10 (emphasis in original).


### 3.  The Adequacy and Independent Ground for the State Rule

The third procedural-default factor is satisfied if the state procedural rule in question was an adequate and independent state ground for denying review of a federal constitutional claim.  "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review."  *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

"Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude full review of Petitioner's prosecutorial-misconduct claims.  Therefore, the third procedural-default factor is satisfied.

### 4.  Cause and Prejudice

The fourth factor requires a habeas petitioner to show "cause" for his state procedural error and resulting prejudice. Petitioner alleges that his defense attorney should have objected to the prosecutor's improper questions and remarks.

"Ineffective assistance of counsel . . . is cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But, as noted above, to prevail on a constitutional claim about trial counsel, a petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 487. The Court looks to Petitioner's underlying claims about the prosecutor to determine whether trial counsel was ineffective for failing to object to the prosecutor's conduct. The Michigan Court of Appeals stated on review of Petitioner's prosecutorial-misconduct claim that, although the prosecutor made one improper remark, the error did not require reversal and Petitioner was not entitled to relief on any of his claims about the prosecutor.

### a. Facts not in Evidence

First, Petitioner alleges that the prosecutor made unsupported factual and legal proclamations. The basis for this argument appears to be the prosecutor's comment during closing arguments that Petitioner's insulting letters to the complainant and blame-shifting were "a common thing that we see in batterers and

people who . . . act like this defendant acts." 2/26/13 Trial Tr., at 14, Dkt. 10-4, p. 4 (Pg. ID 226).

The Michigan Court of Appeals agreed with Petitioner that this remark was improper because there was no evidence in the record to support the statement about how abusive people act. The Court of Appeals, nevertheless, declined to reverse Petitioner's conviction because the trial court instructed the jurors that the lawyers' statements were not evidence and because there was sufficient evidence to convict Petitioner independent of the prosecutor's improper remark. The Court of Appeals concluded that the remark did not affect the outcome of the trial and, therefore, Petitioner was not entitled to a reversal of his conviction.

This Court agrees with the state court that there was no evidence regarding what batterers typically do and that it was improper for the prosecutor to comment on a prejudicial fact not in evidence. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000). However, given the strength of the admissible evidence against Petitioner, the brevity of the prosecutor's comment, and the trial court's jury instruction that the attorneys' statements were not evidence,[3] the remark could not have had a "substantial and injurious effect of influence" on the jury's verdict. *Brecht v.*

_____

[3] *See* 2/25/13 Trial Tr., at 90, Dkt. No. 10-3, p. 23 (PageID. 177); 2/26/13 Trial Tr., at 37, Dkt. No. 10-4, p. 10 (Pg. ID 232).

*Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)).  Thus, the remark was harmless error.

### b.  Eliciting Prejudicial Material

Next, Petitioner alleges that the prosecutor elicited and emphasized irrelevant and prejudicial material during her cross-examination of him and during closing arguments.  For example, the prosecutor asked Petitioner whether he:  (1) spray-painted the words "bitch" and "whore" on the complainant's apartment walls, 2/25/13 Trial Tr., at 247, Dkt. No. 10-3, p. 62 (Pg. ID 216); (2) lied to a friend when he told the friend that he did not know the PPO was in place when he was writing letters to the complainant, *id.,* at 250, Dkt. No. 10-3, p. 63 (Pg. ID 217); and (3) disliked the police, *id*., at 252-53, Dkt. No. 10-3, pp. 63-64 (Pg. ID 217-18).  The prosecutor also referred to the spray-painted insults and Petitioner's dislike for the police in her closing arguments.  2/26/13 Trial Tr., at 4, Dkt. No. 10-4, p. 1 (Pg. ID 223); *id*. at 18, Dkt. No. 10-4, p. 5 (Pg. ID 227); *id*., at 32, Dkt. No. 10-4, p. 8 (Pg ID 230).

The Michigan Court of Appeals stated that the prosecutor's questions about Petitioner writing offensive words on the complainant's walls were relevant and acceptable to prove an element of the crime, namely, that the complainant had a reason to feel threatened by Petitioner.  The Court of Appeals concluded that the

prosecutor did not commit misconduct in eliciting the challenged evidence and that there was no plain error.

As for the prosecutor's questions about Petitioner lying to a friend, the Court of Appeals stated that the purpose of the questions was to impeach Petitioner's credibility. The Court of Appeals stated that the prosecutor elicited relevant testimony regarding Petitioner's credibility and that this was not misconduct.

Finally, regarding the questions about whether Petitioner disliked the police, the Michigan Court of Appeals stated that the questions were meant to show that Petitioner did not intend to comply with the PPO. According to the Court of Appeals, the questions also were meant to contradict Petitioner's statement that he did intend to call the police and that he was taking appropriate steps to obtain his belongings from the complainant's apartment.

The prosecutor was entitled to attack Petitioner's credibility like any other witness because he testified. *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999). The prosecutor also was entitled to point out any inconsistencies or inadequacies in the defense. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). Therefore, the prosecutor's questions and comments were proper, and defense counsel was not ineffective for failing to object to them.

Even if the remarks were improper, the trial court instructed the jurors that the attorneys' questions, remarks, and arguments were not evidence. This instruction likely cured any irregularities in the prosecutor's argument, because "juries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *see also Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) (stating that, when a court instructs a jury that the attorneys' arguments are not evidence, such instructions sometimes cure improprieties in closing arguments) (citing *United States v. Carroll*, 26 F.3d 1380, 1389 n. 12 (6th Cir. 1994)).

### c. Denigrating the Defense

Petitioner asserts next that the prosecutor denigrated the defense and injected negative innuendo about him. This assertion is based on the prosecutor's use of the word "offensive" to describe the questions that defense counsel addressed to Petitioner on direct examination. The prosecutor stated that it was offensive for the defense to suggest that, because Petitioner ultimately complied with the PPO, it negated his prior behavior toward the complainant. 2/26/13 Trial Tr., at 20-21, Dkt. No. 10-4, pp. 5-6 (Pg. ID 227-28).

The Michigan Court of Appeals concluded that the prosecutor's remarks were proper and that any error was cured by the trial court's instruction that the lawyers' statements were not evidence. This Court agrees that the remarks were

proper, because prosecutors are entitled to highlight inadequacies in the defense. *Cristini*, 526 F.3d at 901. Even if the remarks were improper, they were not so egregious as to affect the fairness of the proceedings as a whole. *See United States v. Davis*, 514 F.3d 596, 616 (6th Cir. 2008) (concluding that the prosecutor's description of defense counsel's closing argument as "offensive" was not so egregious as to affect the fairness of the proceedings as a whole) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

### d. Misstatement of State Law

Finally, Petitioner asserts that the prosecutor redefined the crime to fit her theory of the case when she explained the elements of aggravated stalking. The prosecutor stated that one of the elements she had to prove was that a reasonable person would suffer emotional distress as a result of the defendant's conduct. The prosecutor then said that "[t]he reasonable person was someone similarly situated to [the complainant]." 2/26/13 Trial Tr., at 9, Dkt. No. 10-4, p. 3 (Pg. ID 225).

Prosecutors, of course, should not intentionally misstate the law, and the Michigan Court of Appeals implicitly found that the prosecutor's description of a reasonable person as someone similarly situated to the complainant was incorrect. Nevertheless, the trial court charged the jurors to follow the court's instructions if a lawyer said something differently. *Id.*, at 35, Dkt. No. 10-4, p. 9 (Pg. ID 231). The

court then correctly instructed the jurors that the second element which the prosecutor had to prove was "that the contact would cause a reasonable individual to suffer emotional distress." *Id.*, at 43, Dkt. No. 10-4, p. 11 (Pg. ID 233). Jurors are presumed to follow a court's instructions to them, *Marsh*, 481 U.S. at 211; *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001), and because the trial court gave a proper instruction on the law, the prosecutor's error was harmless. *United States v. Simon*, 964 F. 2d 1082, 1087 (11th Cir. 1992).

The Court concludes that the prosecutor's questions and remarks were proper or harmless error. Therefore, defense counsel's failure to object to the questions and remarks satisfied *Strickland's* deferential standard, and Petitioner has failed to show "cause" for his procedural defaults. The Court need not determine whether the alleged constitutional errors prejudiced Petitioner, because he has failed to show cause for his failure to comply with state law. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

### 5. Miscarriage of Justice

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*,

501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496.) "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new and credible evidence of actual innocence, and the evidence against him at trial was substantial. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of Petitioner's prosecutorial-misconduct claims. The claims are procedurally defaulted.

## C. The Trial Judge

In his third claim, Petitioner alleges that the trial judge abused its discretion when it denied his post-trial motion for an evaluation of criminal responsibility. Petitioner asserts that the motion was timely and proper. The Michigan Court of Appeals, nevertheless, determined that Petitioner waived review of the issue by failing to give timely notice of an insanity defense in the state trial court, as

required by Mich. Comp. Laws § 768.20a(1), and *People v. Shahideh*, 482 Mich. 1156; 758 N.W.2d 536 (2008)).

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and waiver extinguishes error, *United States v. Olan*, 507 U.S. 725, 733 (1993). Although Petitioner states that he was mentally debilitated before trial, he did not bring the matter to the trial court's attention until his sentencing. Thus, according to the Michigan Court of Appeals, he waived his right to assert the defense and extinguished any error.

Even if Petitioner did not waive or procedurally default his claim, there is no basis in the record to support his contention that he did not understand what he was doing when he committed his crime. Instead, as pointed out above, the record indicates that Petitioner knew he was not permitted to contact the victim. Therefore, the trial court did not abuse its discretion in denying Petitioner's motion for an evaluation of criminal responsibility.

**D.  The Sentence**

Petitioner was sentenced as a fourth habitual offender, and his final claim challenges his maximum sentence of thirty-five years. He alleges that his maximum sentence should have been no more than five to twenty-five years.

No state court addressed the substantive merits of this claim,[4] but the claim lacks merit because Petitioner merely disagrees with the trial court's interpretation of state law, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Furthermore, because Petitioner was a fourth habitual offender, and because the maximum sentence for his sentence was five years,[5] the trial court was authorized to sentence Petitioner up to life imprisonment. *See* Mich. Comp. Laws § 769.12(1)(b) ("If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court . . . may sentence the person to imprisonment for life or for a lesser term." Petitioner's own attorney acknowledged this principle of law at the beginning of Petitioner's trial. 2/25/13 Trial Tr., at 8, Dkt. 10-3, p. 2 (Pg. ID 156). Petitioner's claim lacks merit in addition to not being cognizable on habeas review.

---

[4] Petitioner raised his sentencing claim for the first time in his application for leave to appeal in the Michigan Supreme Court. The state supreme court denied leave to appeal in a one-sentence order, which stated that it was not persuaded to review Petitioner's claims. *See Willis*, 498 Mich. at 884; 869 N.W.2d at 584.

[5] *See* Mich. Comp. Laws § 750.411i (3)(a) (noting that, except when the victim is less than eighteen years old, aggravated stalking is punishable by imprisonment for no more than five years).

## IV. Conclusion and Order

Petitioner's final claim lacks merit, and the state appellate court's rejection of Petitioner's other claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts. The state-court rulings also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Accordingly, **IT IS ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on appeal without further authorization because he was granted *in forma pauperis* in this Court (Dkt. No. 6), and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

SO ORDERED.

Dated:     March 7, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 7, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager